UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

BRIAN S. FORD                                                        PLAINTIFF

v.                                                          NO. 3:19-CV-931-CRS

ANDREW M. SAUL,
Commissioner of Social Security                                     DEFENDANT

## MEMORANDUM OPINION

This matter is before the court for consideration of the Findings of Fact, Conclusions of Law, and Recommendation of the United States Magistrate Judge (the "report") in this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the denial by the Commissioner of Social Security ("Commissioner") of plaintiff Brian S. Ford's claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").

The matter was referred to the United States Magistrate Judge for findings and recommendation. The Magistrate Judge conducted a review of the findings set forth in the final decision of the Commissioner, concluding that substantial evidence supported the findings of the Administrative Law Judge ("ALJ") and recommending that the Commissioner's decision be affirmed. DN 21. Ford has filed objections to the Magistrate Judge's report which we address below, conducting a de novo review of those portions of the Magistrate Judge's report to which the claimant objects, in accordance with 28 U.S.C. § 636(b)(1)(C).

Ford is in his early 40s. He originally filed for DIB on May 13, 2013 alleging disability beginning May 3, 2012. The application was denied initially and on reconsideration. After an administrative hearing, an unfavorable decision issued on July 24, 2014 and Ford did not appeal.

Ford again applied for DIB and for SSI on September 29, 2016 alleging he became disabled on July 26, 2014.  He alleged disability due to schizophrenia, anxiety, diabetes, depression, neuropathy, and back pain.  His applications were denied initially and on reconsideration.

Ford requested and was given a hearing before ALJ Jerry Lovitt on October 26, 2018 at which time he appeared, represented by counsel, and gave testimony.  Testimony was also taken from an impartial vocational expert who appeared at the hearing.  On January 8, 2019, the ALJ issued a written opinion evaluating the evidence under the required 5-step process and concluding that

> Based on the application for a period of disability and disability insurance benefits filed on September 29, 2016, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on September 29, 2016, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

DN 11-2, p. 19, PageID # 85.

We need not recount the ALJ's entire analysis here, as it is described in detail in the Magistrate Judge's report.  Instead, we focus on the issues raised by Ford in objection to the Magistrate Judge's findings and recommendation.  Ford's objections challenge the Magistrate Judge's conclusion that substantial evidence in the administrative record supports the ALJ's finding at Step Three that Ford "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." DN 11-2, pp. 20-21, PageID # 722-73, and the ALJ's determination that Ford has the Residual Functional Capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b)

and 416.967(b) with specified exceptions.  *Id.*, PageID# 75.  Ford's arguments are addressed in greater detail below.  We note here, however, that Ford highlights the same alleged deficiencies in the ALJ's decision as raised in his summary judgment brief, and, to that extent, we are presented a rehash of arguments which were already addressed in a fulsome manner by the Magistrate Judge.

The ALJ found that Ford has the severe impairments of (1) degenerative disc disease, (2) peripheral neuropathy, (3) obesity, and (4) depression, (5) anxiety, (6) atypical psychosis, (7) panic disorder, and (8) schizoaffective disorder.  DN 11-2, p. 4, PageID # 70.  The ALJ further noted that

> Additionally, the undersigned has considered the impairments of type II diabetes mellitus and obstructive sleep apnea (OSA), which are found to be non-severe. This finding is based on these conditions being categorized as mild, essentially resolved, stable, and/or adequately controlled with medication of other conservative-type treatment, and therefore causing no more than a minimal limitation in the claimant's ability to perform basic work activities.

*Id.*  Ford has not challenged these findings.

The ALJ found that Ford does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, a finding that Ford does challenge.

The ALJ found that Ford's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Ford's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  *Id.*, PageID # 78.  He then explains in exacting detail the reasons for this finding.  *Id.*, PageID # 78-83, and the accommodation he made for specific limitations.  *Id.*, PageID # 83-84.

The ALJ found that

[T]he claimant has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: He can perform occasional climbing of ramps/stairs, and occasional balancing, stooping, kneeling and crouching. He can perform occasional pushing of foot controls with the bilateral lower extremities. He can never crawl, and cannot climb ladders, ropes or scaffolds, and he can have no exposure to unprotected heights, and no exposure to workplace hazards such as dangerous machinery with moving parts that fail to stop when human contact is lost. He cannot perform any driving, and can perform no operation of heavy machinery or drivable workplace equipment such as a forklift, scissor lift or a pallet jack. He can have no more than occasional exposure to vibration, and to no more than moderate levels of noise as defined in Appendix D of the Selective Characteristics of Occupations (SCO). He is able to understand, remember and carry out simple, routine tasks. He can use judgment in making simple, work-related decisions consistent with this type of work, and requires an occupation with an established routine and set procedures involving few changes during workday. He cannot perform any fast-paced production line, assembly line, or quota driven work, and cannot perform tandem tasks. He would require work where the supervisor communicates instructions verbally or by demonstration, and he can have occasional contact with supervisors and co-workers, and no contact with the general public. He will be off-task for no more than 10% of the workday in addition to normally scheduled breaks, and will miss no more than one day of work per month.

DN 11-2, p. 9, PageID # 75.

The Magistrate Judge recounted in detail the record evidence relied upon and supporting the ALJ's findings. The Magistrate Judge's report thoroughly investigated the foundation in the record for the ALJ's findings at Step Three.

At Step Three, the claimant has the burden of proof, *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004), and each listing identifies "the objective medical and other findings needed to satisfy the criteria of that listing." *Reynolds v. Comm'r of Soc. Sec.*, 424 F.App'x. 411, 414 (6th Cir. 2011)(quoting 20 CFR 404.1525(c)(3)). In order to satisfy Listing 12.03 for "Schizophrenia" and "other psychotic disorders," Ford was required to show that he met the requirements of Paragraphs A and B or the requirements of Paragraphs A and C.[1]

---

[1] The ALJ addressed Listing 1.04 Disorders of the Spine; and 11.14 Peripheral Neuropathy. He also noted that there is no medical listing for obesity, but that it can cause limitation of function. He noted that this was taken into account at the 2nd through 5th steps of the sequential disability evaluation process, and that he fully considered the

<u>Paragraph A</u>

ALJ Lovitt did not mention the Paragraph A requirements, instead finding that Ford did not meet the requirements of Paragraph B or Paragraph C and thus did not satisfy the requirements of Listing 12.03.  The parties argued whether the evidence of record supported a finding that Ford met the Paragraph A criteria.

As explained by the Magistrate Judge, "Paragraph A pertains to the claimant's medically documented health symptoms and requires he show '[m]edical documentation' of one or more of the following :  (1) Delusions or hallucinations; (2) Disorganized thinking (speech); or (3) Grossly disorganized behavior or catatonia."  DN 21, p. 5, PageID # 1604.

Ford urges that ALJ Lovitt implicitly found that he met the requirements of Paragraph A. In evaluating the ALJ's decision, the Magistrate Judge first noted that

> The Sixth Circuit has made it clear that even if an ALJ's step-three conclusion was cursory, the decision is supported by substantial evidence if "the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three."  *Forrest v. Comm'r of Soc.Sec.,*, 591 F. App'x 359, 366 (6th Cir. 2014)(citing *Bledsoe v. Barnhart,* 165 F. App'x 408, 411 (6th Cir. 2006)); *see also Bryant v. Colvin,* No. 3:16CV-00121-DW, 2016 WL 6584917, at *3 (W.D.Ky. Nov. 4, 2016)(finding that despite the ALJ "passing over subsection (2) of Listing 12.04C," the ALJ made sufficient factual findings throughout his opinion to support his finding at step three).  In addition, the Sixth Circuit recognizes that any error with respect to the ALJ's step-three analysis is harmless unless the claimant can establish that he satisfied the listing in question.  *Forrest,* 591 F. App'x at 366; *see also Chappell v. Comm'r of Soc. Sec.,* No. 1:14-cv-1005, 2015 WL 4065261, at *4 (W.D.Mich. July 2, 2015).

DN 21, p. 7, PageID # 1606.

The Magistrate Judge went on to recite the various instances where ALJ Lovitt "recognized Ford's auditory hallucinations." *Id.* The Magistrate Judge noted that the ALJ

---

claimant's obesity and its exacerbating effects on the impairments in the context of the overall record evidence in making his decision.  DN 11-2, p. 6, PageID # 72.  These findings by the ALJ have not been challenged herein.  The challenge is limited to the ALJ's evaluation of Listing 12.03.

referenced treatment notes and described contradictions found by the ALJ in Ford's self-reported auditory hallucinations, described as voices which were "whispering," "like a TV in another room" and alternately "loud and screaming;" which "d[id] not give instructions," but were "telling him to 'leave.'"  The Magistrate Judge noted that "[d]espite these contradictions, ALJ Lovitt goes on to state that Ford's auditory hallucinations began in his late teens and continue 'to interfere with concentration.' (Tr. 30)."  *Id.* at 8.  The Magistrate Judge thus concluded: "Based on this evidence, the Court finds ALJ Lovitt made sufficient findings elsewhere in his opinion supporting Ford meeting the Paragraph A criteria."  *Id.*

Ford takes issue with the Magistrate Judge's statement that "Ford's subjective complaints cannot comprise 'medical documentation.'"  *D.* at 7.  Ford's subjective complaints alone do not satisfy the "medical documentation" requirement of Paragraph A. Ford does not argue to the contrary.  In any event, the Magistrate Judge agreed with Ford that sufficient evidence exists in the record that Ford met the requirements of Paragraph A.  The Magistrate Judge rejected the Commissioner's argument against that conclusion. Thus, Ford's objection to the Magistrate Judge's analysis concerning Paragraph A is puzzling.

<u>Paragraph B</u>

The Magistrate Judge found that ALJ Lovitt's finding that Ford was shown to be only moderately limited in each of the four areas under Paragraph B was supported by substantial evidence.

The Magistrate Judge correctly noted that Paragraph B describes four functional areas and requires a claimant to show that he has extreme limitation in one area or marked limitations in two of the areas: (1) Understand, remember, or apply information; (2) Interact with others; (3)

Concentrate, persist or maintain pace; and (4) Adapt or manage oneself. A "marked" limitation means that a claimant's functioning in an area "independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 CFR § Pt. 404, Subpt. P, App'x 1. A "moderate" limitation means the claimant's functioning in an area "independently, appropriately, effectively, and on a sustained basis is fair." *Id.*

ALJ Lovitt addressed each of the four areas of Paragraph B, citing to the record evidence that suggested a limitation or evidenced a lack thereof, and finding, in each instance, that moderate limitation was supported. DN 11-2, pp. 7-8, PageID # 73-74. Nowhere did he dismiss out-of-hand that Ford suffers some limitation in these areas. Rather he concluded that

> The limitations identified in the "Paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "Paragraph B" mental functional analysis.
>
> Finally, the undersigned specifically notes that none of the professional medical opinions of record definitively indicate that the claimant's impairments meet or equal the criteria of a listed impairment, nor does the objective medical evidence of record indicate as much. Accordingly, the undersigned has reviewed the records and finds that the claimant does not have impairments that meet the requirements of any section of Appendix 1.

*Id.*

The Magistrate Judge recited the well-supported findings of the ALJ and addressed the challenges to those findings raised by Ford and reiterated in the objections to the Magistrate Judge's report. We find no error in the Magistrate Judge's opinion rejecting Ford's challenges and concluding that the ALJ's findings concerning Paragraph B were supported by substantial evidence in the record. *See* DN 21, pp. 8-11, PageID # 1608-1610.

Ford contends that there is "objective evidence" supporting marked limitations in all four areas of Paragraph B, citing to the Montreal Cognitive Assessment (MCA) performed by Dr. Agrawal, his treating psychologist, and Global Assessment of Functioning (GAF) score(s).  He contends that Dr. Dennis' findings of marked limitations should have been credited because objective evidence supports the findings and that his opinion should not be discounted on the ground that it is based, in part, on the subjective complaints of Ford.

With respect to the MCA, the Magistrate Judge notes that while Ford urges that his score of 11/30 was "positive for dementia," two months later Dr. Agrawal noted that Ford's "dementia work up labs [were] fine."  Thus, the Magistrate Judge correctly concluded that "without elaboration on these test results, this evidence does not demonstrate a marked limitation…"  DN 21, p. 9, PageID # 1608.

Next, the ALJ stated that he assigned no weight to the Global Assessment of Functioning Score(s) explaining:

> In making this finding, it is noted that GAF scores represent a particular clinician's subjective evaluation at a single point in time.  The undersigned generally gives less weight to a specific GAF score than to the bulk of other, more convincing evidence.  This is because GAF score may vary from day to day, from time to time, and between practitioners.  Finally, the GAF score is not designed for adjudicative determinations.  Other evidence may outweigh GAF scores, and, in this case, the other evidence is more informative and is given more weight, as described above in the analysis of the "B" criteria.  The undersigned, therefore, gives no weight to the GAF score(s) documented in this case.

DN 11-2, pp. 16-17, PageID # 82-83.

While GAF scores constitute a form of "objective evidence," Ford does not challenge the ALJ's analysis and conclusion to assign no weight to GAF scores documented in the case.

As recounted by the Magistrate Judge, ALJ Lovitt recognized that Ford had moderate limitation in understanding, remembering, or applying information, noting treatment records

from 2016 where Ford described that he forgets things, gets confused, can't drive, gets lost, forgets directions, and can't cook as he forgets. However, the ALJ cited to treatment records including First Stop Urgent Care, Baptist Hospital, Centerstone, Seven Counties Services and Strickland, Cox, and Associates from September 2015 to April 2018 which detailed Ford's memory to be "within normal limits and intact" and his cognitive functioning to also be "within normal limits." DN 11-2, p. 7, PageID # 73. The ALJ concluded that "the undersigned has considered treatment reports detailing mood fluctuations and episodic confusion, which may result in periodic diminishments in cognitive functioning…Thus the finding of a moderate limitation in this category is supported." *Id.* The Court agrees with the Magistrate Judge's conclusion that this finding of moderate limitation in area B(1) is supported by substantial evidence in the record.

ALJ Lovitt found that Ford had moderate limitation in the area of interacting with others (B(2)). In so finding, the ALJ cites to the adult functional report completed by Ford in which he indicated that he spends time with others but has difficulty getting along with family, friends and neighbors. The ALJ noted too, however, that treatment reports "routinely described [Ford] as pleasant and cooperative with normal mood and appropriate affect. Ford has been married to his current wife for thirteen years and is living with her and their two children who he described as a 'good support system.'" The ALJ found Ford to be polite with no communication problems, socially engaging with good eye contact and with a pleasant and professional demeanor at the hearing. *Id.* Despite this evidence and his own observations, the ALJ noted a number of exam reports which detailed "the claimant's ability to meet others and develop friendships as "*fair,*" which he determined was supportive of a finding of a moderate limitation. There is substantial evidence that supports the ALJ's conclusion that Ford has a moderate limitation in area B(2).

Ford contends to the contrary, however, relying on the purported "well-supported" limitations found by Dr. Dennis, the psychologist who performed a consultative examination of Ford in 2017.  However, ALJ Lovitt explained later in his decision why he gave little weight to Dr. Dennis' opinion.  DN 11-2, pp. 15-16, PageID # 81-82.  We quote in full the portion of the decision in which he addresses the matter:

> Moreover, the undersigned notes that the claimant underwent a psychological consultative evaluation with Dr. Brandon Dennis, PsyD in January of 2017, who detailed the following observations and conclusions (Ex. B6F, 1-3):
>
> The claimant is alleging disability on the basis of schizophrenia and other physical concerns. He is currently in treatment for schizophrenia and depression, and has been for the last 7-8 months.
>
> Reportedly, his depressive and psychotic features (auditory hallucinations) began in his late teens. He continues to have auditory hallucinations that interfere with concentration. He has been psychiatrically hospitalized on one occasion for a couple of days. He attempted suicide at that time. The claimant presently lives with his wife and two children. The claimant takes the garbage out and sometimes does laundry. He has a driver's license, but usually avoids driving due to confusion. However, it is noted that he drove himself to the present exam. He socializes mostly with his wife, children and occasionally with his brother. On observation, his attitude was cooperative and engaged. Affect was positive and congruent. He was attentive and able to concentrate, though he did report auditory hallucination. Speech was normal for volume, quality, clarity and fluency. Comprehension was reasonable and thought process was linear. There was no evidence of responding to internal stimuli. Judgment and insight appeared to be reasonably good. He was oriented x4, and recent/remote memory was intact.
>
> Additionally, Dr. Dennis opined the following functional limitations (Ex. B6F, 4):
>
> "*This claimant would be expected to have moderate difficulty understanding, retaining and carrying out one-two step and complex instructions. He could be expected to sustain concentration and persist in work-related activity at a reasonable pace with marked difficulty. He would be expected to have marked difficulty in his ability to maintain effective social interaction on a consistent and on an independent basis with supervisors, co-workers and the general public. His ability to tolerate the stress and pressure of daily work activity in a competitive setting is probably markedly to extremely limited overall.* "
>
> However, in consideration of the above assessment offered by Dr. Dennis, the undersigned gives his opinion very little weight. In making this finding, it is noted

this his conclusions are internally inconsistent with his own exam findings. More specifically, his opined limitations appear to be predominately predicated on the subjective complaints and symptoms put forth by the claimant at the time of exam, rather than based on the totality of the objective evidence. Overall, the basis for "marked" and "extreme" limitations remains unclear as these findings are not well explained, and are otherwise unsupported by other relevant evidence (e.g., the longitudinal treatment history).

DN 11-2, pp. 15-16, PageID #81-82.

ALJ Lovitt's reasoning for affording Dr. Dennis' opinion little weight was fourfold.

First, the ALJ noted that Dr. Dennis' opinion that Ford suffered marked limitations was internally inconsistent with his own exam findings which included that :"On observation, his attitude was cooperative and engaged. Affect was positive and congruent. He was attentive and able to concentrate, though he did report auditory hallucination. Speech was normal for volume, quality, clarity and fluency. Comprehension was reasonable and thought process was linear. There was no evidence of responding to internal stimuli. Judgment and insight appeared to be reasonably good. He was oriented x4, and recent/remote memory was intact."  Also, Dr. Dennis noted that despite reporting that he usually avoids driving due to confusion, Ford drove himself to the exam.

Second, the ALJ noted that the limitations opined by Dr. Dennis appeared to be predominantly predicated on the subjective complaints and symptoms reported to him at the exam including that "[h]e is currently in treatment for schizophrenia and depression, and has been for the last 7-8 months. Reportedly, his depressive and psychotic features (auditory hallucinations) began in his late teens. He continues to have auditory hallucinations that interfere with concentration. He has been psychiatrically hospitalized on one occasion for a couple of days. He attempted suicide at that time."  Additionally, Ford reported to Dr. Dennis that he "takes the garbage out and sometimes does laundry," he "usually avoids driving due to

-11-

confusion," and he "socializes mostly with his wife, children, and occasionally with his brother." This is apparently the extent of the information upon which Dr. Dennis concluded that Ford would be expected to have marked difficulty in concentration, persistence, and pace and in maintaining effective social interaction, and upon which Dr. Dennis found that Ford would have markedly to extremely limited ability tolerate the stress and pressure of daily work activity. ALJ Lovitt determined that the totality of the evidence did not support Dr. Dennis' opinion that Ford suffered such extensive limitations.

Third, despite his surmise that Dr. Dennis based his opinion predominantly on the subjective complaints and symptoms of Ford, the ALJ noted that the basis for the findings of "marked" or "extreme" limitations was inadequately explained and thus was not to be credited. Indeed, Dr. Dennis' statement that Ford would be expected to have these limitations is wholly conclusory and, in light of the very limited information reported by Ford which appears to be contradicted by Dr. Dennis' own observations, the ALJ was well within his discretion to discount the weight he would give to this consultant's opinion.

Fourth, the ALJ noted that Dr. Dennis' opinion was an outlier, as it was not otherwise supported by other relevant evidence such as Ford's longitudinal treatment history.

Ford takes issue with the ALJ's reference to Dr. Dennis' purported reliance on Ford's subjective complaints, urging that "psychiatric reports should not be ignored merely because they 'do not lend themselves to the same degree of substantiation as other medical impairments," citing *Blankenship v. Bowen*, 874 F.2d 1116 (6th Cir. 1989). This argument misconstrues the ALJ's finding which did not denigrate the value of subjective reports generally, but rather found it apparent that Dr. Dennis had focused on the subjective reports to the exclusion of the totality of the evidence and in contradiction to his own evaluative observations. Further, as articulated

-12-

above, there were no less than four bases upon which the ALJ determined that Dr. Dennis' opinion was entitled to little weight.  We agree with the Magistrate Judge that there was no error in the ALJ's determination and that there was substantial evidence to support his finding that Ford was moderately limited in the area of interacting with others (B(2)).

The ALJ found Ford moderately limited in his ability to sustain concentration, persistence, and pace (B(3)) based upon Ford's representation in the adult function report that he has difficulty with concentration and with completing tasks.  The ALJ found this supported by a number of treatment reports which indicate that auditory hallucinations make it difficult for Ford to concentrate, he is easily distracted, and he has impaired focus and attention.  However, noting the various other reports in the record that "detailed the claimant as having no deficits in concentration or attention span," the ALJ found only moderate limitation to be supported by the evidence.  DN 11-2, p. 8, PageID # 74.

Ford challenges the ALJ's finding of moderate limitation in area B(3) raising the same argument concerning Dr. Dennis' opinion.  Dr. Dennis opined that Ford would have marked difficulty with concentration, persistence, and pace and Ford contends this opinion should be given greater weight.  For the same reasons previously articulated, we conclude that ALJ Lovitt's analysis of Dr. Dennis' opinion was sound and his decision to afford it little weight was well-supported.  We agree with the Magistrate Judge's determination that the ALJ's finding of moderate limitation in concentration, persistence, and pace was supported by substantial evidence in the record for the reasons described.

Ford relies on the opinion of Dr. Dennis that Ford's "ability to tolerate the stress and pressure of daily work activity in a competitive setting is probably markedly to extremely limited overall" to support  his contention that the record establishes that he is extremely limited in

adapting and managing himself.  Again, we reject Ford's reliance on the opinion of Dr. Dennis for the reasons stated above.  The Magistrate Judge noted in determining that Ford was moderately limited in adapting and managing himself that the ALJ indicated that Ford reported that he had difficulty with various aspects of personal care and needs reminders to care for himself and take his medications.  However, despite needing reminders, Ford reported that he could prepare meals, do chores, go out alone and use a computer.  ALJ Lovitt noted that treatment records also indicated that Ford was capable of performing various activities of daily living.  Ford also indicated that he was able to take his children to the park and to skating parties and to care for their three dogs.  Thus we agree with the Magistrate Judge that substantial evidence supported the finding of the ALJ that Ford was moderately limited in adapting and managing himself (B(4)).

We find no error in the ALJ's conclusion that, "based on the above discussion, because the claimant's mental impairments do not cause at least two "marked" or one "extreme" limitation, the "Paragraph B" criteria are not satisfied.

Paragraph C

As noted by the Magistrate Judge, Paragraph C evaluates the claimant's ability to function independently and/or handle changes in the environment.  The claimant must demonstrate a "serious and persistent" mental disorder by proving a medically documented history of the existence of the disorder over two years and providing evidence of both (1) Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminished the symptoms and signs of [the] mental disorder; and (2) Marginal adjustment, that is, [the claimant has] minimal capacity to adapt to changes in

[one's] environment or to demands that are not already part of [the claimant's] daily life.  DN 21, p. 6, PageID # 1605.  The ALJ found that "[i]n this case, the evidence fails to establish the presence of "Paragraph C" criteria."  DN 11-2, p. 8, PageID # 74.

The Magistrate Judge carefully considered and ultimately rejected Ford's argument that the evidence established that he met the criteria of Paragraph C.  DN 21, pp. 12-13.  Ford has not objected to the Magistrate Judge's conclusion.  Therefore, Ford has failed to show that ALJ Lovitt erred in finding that the Paragraph C criteria were not met.

As there has been no showing that Ford has met the criteria of Paragraphs A and B or Paragraphs A and C, there was no error in ALJ Lovitt's determination that Ford did not meet Listing 12.03.  The ALJ's findings were supported by substantial evidence in the record.  We therefore affirm the Magistrate Judge's analysis and conclusion to that effect.

## RFC Determination

Ford raises an additional objection relating to the GAF scores in the record.  He urges that in the ALJ's Residual Functional Capacity (RFC) determination, he erred by citing to a GAF worksheet, stating that "Mr. Ford's depression, anxiety, atypical psychosis, panic disorder, and schizoaffective disorder, are 'generally characterized as moderate in severity."  In fact, the GAF score was 46 on the worksheet referenced by the ALJ which would reflect "serious" symptoms.  The GAF score was admittedly not used in the Step Three analysis and the ALJ thoroughly explained his reasoning for affording GAF scores no weight.  Additionally, this single reference in the RFC determination was harmless error, as the ALJ's analysis of Ford's RFC was thorough, detailed, and amply supported by record evidence indicating the moderate limitations he found, as the Magistrate Judge detailed in her report at pages 13-19.  DN 21, PageID # 1612-1618.

There are no further objections by Ford to the extensive RFC determination by the ALJ except with respect to the little weight given to Dr. Dennis' opinion, a point already extensively discussed herein.  We note additionally that in his RFC determination, the ALJ gave considerable weight to (1)  Dr. Jane Brake, Ph.D. and Dr. Lea Perritt, Ph.D., the State agency psychological consultants at the initial disability and reconsideration levels who opined moderate limitations in their assessment of the Paragraph B criteria, , and (2) Dr. Timothy Gregg, M.D., the State agency medical consultant at the reconsideration level, who opined that Ford was capable of performing tasks at the light level of exertion.   DN 11-2, p. 15, PageID #81.  This evidence among much more which is detailed in the ALJ's decision, taken as a whole, illustrates that substantial evidence supported ALJ Lovitt's RFC determination.

We find that Ford's argument does not identify reversible error in the ALJ's decision. For these reasons set forth herein, this court concludes that Magistrate Judge's report was correct in concluding that the ALJ's decision is supported by substantial evidence.  Ford's objections to the Magistrate Judge's report are without merit and will be denied.  The Magistrate Judge's report will be accepted and adopted in its entirety.  A separate order and judgement will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**

March 31, 2021

Charles R. Simpson III, Senior Judge
United States District Court

-16-